1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
      jvenditti@bursor.com
      idiaz@bursor.com

2

3

4

5

6

7

8

*Attorneys for Plaintiffs and the Putative Class*

9

10

### UNITED STATES DISTRICT COURT

11

### NORTHERN DISTRICT OF CALIFORNIA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| JEROME ORANTE and JOHN BOYD, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br>    v.<br><br>KITS.COM TECHNOLOGIES, INC., d/b/a OPTICONTACTS.COM,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiffs Jerome Orante and John Boyd (collectively, "Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Kits.com Technologies, Inc., doing business as "OptiContacts.com" ("Defendant" or "OptiContacts"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiffs bring this putative class action complaint on behalf of themselves and all other similarly situated individuals who were unlawfully charged a "junk fee" when they made online purchases at Defendant's website, www.OptiContacts.com (the "Website").

2.      Defendant specializes in selling contact lenses but also sells prescription glasses and other eyewear through the Website.[1]  Defendant is a key player in the optical and eye care industry. In fact, it is one of the world's leading and fastest-growing contact lens companies on the internet, having sold over 50 million lenses since its inception in 2004.[2]  As stated on its Website, Defendant's business philosophy is to "*keep prices low*,"[3] and guarantees to consumers the "lowest possible price" for contact lenses.[4]  However, although Defendant's Website provides an illusion of low prices – lower than those of its competitors – when it displays low prices for its products on its Website, in reality, Defendant's prices are not as low as they seem.

3.      Consumers who purchase items from Defendant are lured onto the Website by the promise of a low price that does not exist because that advertised price fails to include mandatory fees ultimately charged at checkout.  This type of "drip pricing" – illegal in California for years – has recently become the subject of a proposed national ban on junk fees.

---

[1] *See* OptiContacts.com, *About Us*, https://www.opticontacts.com/aboutus.html (last visited Nov. 13, 2025).

[2] *See id.*

[3] *Id.*

[4] OptiContacts.com, *Home Page*, https://www.opticontacts.com/index (last visited Nov. 13, 2025).

4.      As detailed herein, Defendant adds mandatory fees on items purchased through its Website, charging a hefty "Processing" or "Handling" Fee[5] (the "Fee") with each transaction. Defendant adds this additional Fee to the advertised prices of the products it sells through the Website.  The Fee is not included in the product's advertised price, and it is not revealed to the customer making a purchase through the Website until they proceed past the cart and enter the "Shipping & Billing" portion of the checkout process.  The amount of the Fee charged varies depending on the type of product purchased and the amount spent.

5.       Defendant waits until consumers have gone through the laborious process of selecting various optical products, including providing prescription information, to disclose the Fee, only displaying this mandatory Fee at the end of the checkout process.

6.      Defendant adds the mandatory Fee to the final purchase price of all products sold on its website.  In all cases, the Fee is not disclosed in the advertised prices, misrepresenting to consumers the total price of the products they intend to purchase and creating a false impression of price competitiveness.  As a result, consumers are blindsided by the additional Fee, requiring them to reevaluate or forgo their purchase plans, or to begrudgingly expand their budgets.

7.      In or around March 2025, Plaintiff Orante purchased contact lenses from Defendant's website.  Altogether, Defendant advertised the price of these items as $172, exclusive of tax and shipping, on its Website.  However, when Plaintiff Orante reached the "Shipping & Billing" portion of the checkout process, a "Processing" Fee of $17.97 was added to the total cost of the items.  This Fee was not included in the original price of the items advertised on Defendant's Website.

8.      In or around August 2025, Plaintiff Boyd purchased four packs of Biofinity contact lenses from Defendant's website.  Defendant advertised the total price of these items as $39.96, exclusive of tax and shipping, on its Website.  However, when Plaintiff Boyd reached the "Shipping & Billing" portion of the checkout process, an exorbitant "Processing" Fee of $57.14

---

[5] Defendant's Fee is listed as a "Processing" Fee on its checkout page.  However, it is listed as a "Handling" Fee on its customer invoices.  For purposes of this Complaint, Defendant's Fee will be referred to interchangeably as the "Processing" Fee or simply the "Fee."

was added to the total cost of the items. This Fee was not included in the original price of the items advertised on Defendant's Website. In fact, the Fee alone was greater than the total advertised cost of the products that Plaintiff Boyd purchased.

9.      At all relevant times, Defendant knew, or should have known, that the prices it advertises on its website do not represent the total price charged to consumers.

10.     Advertising products at a price that does not include all mandatory fees, with the exception of taxes imposed by the government, and shipping costs incurred in shipping a product to a consumer, violates California's consumer protection laws, including the Consumers Legal Remedies Act pursuant to Cal. Civ. Code § 1770(a)(29)(A) (the "Honest Pricing Law"), among other statutes.

11.     As a result of Defendant's failure to take appropriate or remedial action with respect to the Class, and affirmative misrepresentations of material fact, Defendant has caused Plaintiffs and members of the Class to (1) bear mandatory expenses and costs they otherwise should not have had to bear, (2) be misled as to the actual price of the product, and (3) be subjected to "bait and switch" pricing. Plaintiffs seek to enjoin Defendant's unlawful and unfair practices and seek restitution for members of the Class for the losses they have incurred. Plaintiffs also seek attorneys' fees, costs, and expenses.

12.     For the foregoing reasons, Plaintiffs bring this action individually and on behalf of all others similarly situated based on Defendant's unlawful failure to display the Fee with the initially advertised purchase prices, seeking damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for violation of: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

## THE PARTIES

13.     Plaintiff Jerome Orante ("Plaintiff") is a California citizen residing in Concord, California. In or around March 2025, Plaintiff Orante purchased contact lenses from Defendant's Website while located in Concord, California. Altogether, Defendant advertised the price of these

1    items as $172, exclusive of tax and shipping, on its Website.  When browsing and selecting which

2    contact lenses to buy, Plaintiff Orante relied on Defendant's advertised prices to decide whether to

3    purchase that item or not.  Plaintiff Orante added the items to his cart, and the price remained the

4    same.  However, once Plaintiff Orante reached the "Shipping & Billing" portion of the checkout

5    process, a "Processing" Fee of $17.97 was added to the total cost of the items.  This Fee was not

6    included in the original price of the items advertised on Defendant's Website.  Thus, ultimately,

7    Plaintiff Orante paid the advertised price of each of the products he had selected, but also had to

8    pay the mandatory "Processing" Fee at checkout—despite the fact that Defendant waited until the

9    last moment to reveal that mandatory Fee, in violation of the CLRA's Honest Pricing Law and

10    other California consumer protection statutes.

11    14.    Plaintiff John Boyd ("Plaintiff") is a California citizen residing in Los Angeles,

12    California.  In or around August 2025, Plaintiff Boyd purchased four packs of Biofinity contact

13    lenses from Defendant's Website while located in Los Angeles, California.  Altogether, Defendant

14    advertised the price of these items as $39.98, exclusive of tax and shipping, on its Website.  When

15    browsing and selecting which contact lenses to buy, Plaintiff Boyd relied on Defendant's

16    advertised prices to decide whether to purchase that item or not.  Plaintiff Boyd added the items to

17    his cart, and the price remained the same.  However, once Plaintiff Boyd reached the "Shipping &

18    Billing" portion of the checkout process, a "Processing Fee" of $57.14 was added to the total cost

19    of the items.  This Fee was not included in the original price of the items as advertised on

20    Defendant's Website.  In fact, the Fee alone exceeds the advertised price of the purchaSed items

21    themselves.  Thus, ultimately, Plaintiff Boyd paid the advertised price of each of the products he

22    had selected, but also had to pay the mandatory "Processing" Fee at checkout—despite the fact that

23    Defendant waited until the last moment to reveal that mandatory Fee, in violation of the CLRA's

24    Honest Pricing Law and other California consumer protection statutes.

25    15.    Defendant Kits.com Technologies, Inc., doing business as "OptiContacts.com"

26    ("Defendant" or "OptiContacts"), is a Canadian corporation.  At all times relevant to the allegations

27    herein, Defendant has advertised, marketed, made available for sale, and/or distributed products to

28    consumers in California and throughout the United States.  Defendant has sold its products in, and

has transacted in and throughout, California and the United States at all times during the Class Period. In addition, at all relevant times herein, Defendant has owned, operated, and controlled the Website, where it, *inter alia*, markets and/or sells contact lenses, prescription glasses, and other eyewear.

16.    Plaintiffs reserve the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(C), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and the members of the proposed Class are citizens of a state while Defendant is a citizen or subject of a foreign state.

18.    This Court has personal jurisdiction over Defendant as a foreign corporation because Plaintiffs' injuries and damages alleged herein arise from or relate to Defendant's marketing sale of the products at issue, and its delivery of such products, to consumers in California, including Plaintiffs.  In addition, Defendant has purposefully availed itself of the laws and benefits of doing business in California and its actions deliberately targeted Plaintiffs and other California consumers in California because it markets, sells, and ships its products to consumers in California.  Further, Plaintiffs ordered the unlawfully marketed products from Defendant's Website while in California and Defendant delivered such products to Plaintiffs in California.  Thus, jurisdiction is proper because Defendant has specific, meaningful contacts with the State of California, and Plaintiffs' alleged injury or damage arises from or relates to such contacts.

19.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events giving rise to the claims occurred in this District given that Plaintiff Orante was located in this District when he purchased items from the Website and paid the unlawful Fee at issue.

**FACTUAL ALLEGATIONS**

A.    **Background On California's Honest Pricing Law**

20.    On July 1, 2024, the California Legislature amended the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et. seq.*, making it illegal "for most businesses to advertise or list a price for a good or service that does not include all required fees or charges."[6]

21.    This amendment to the CLRA was made to rein in "drip pricing" by "bring[ing] price transparency to all sectors of the state's economy."  California Bill Analysis, S.B. 478 Assem., 7/11/2023.  Drip pricing "is a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process.  The additional charges can be mandatory charges, such as hotel resort fees and—critically— Defendant's "Processing" Fee at issue here.[7]

22.    In particular, the amendment was a response to the issue of when "a seller uses an artificially low headline price to attract a customer and usually either discloses additional required fees in smaller print, or reveals additional charges later in the buying process."[8]  The authors of the amendment emphasized that "[h]iding required fees is nothing more than a deceptive way of hiding the true price of a good or service.  Transparency and full disclosure in pricing are crucial for fair competition and consumer protection."[9]

23.    Further, the California Legislature has recognized that drip pricing on price-comparison marketplaces, like Defendant's Website here, are particularly harmful to consumers because "[w]hen merchants include hidden or 'junk fees' in the purchase price of goods and services after putting out a much lower advertised price (the bait), consumers are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online." California Bill Analysis, S.B. 1524 Sen., 6/25/2024.  This defeats the entire purpose of a price-comparison website as the consumer does not get an accurate picture of the prices being compared.

---

[6] State of California Department of Justice, *SB 478 Hidden Fees*, https://oag.ca.gov/hiddenfees.

[7] *See* Federal Trade Commission, *The Economics of Drip Pricing* (May 21, 2012), *available at* https://www.ftc.gov/news-events/events/2012/05/economics-drip-pricing.

[8] State of California Department of Justice, *SB 478 Hidden Fees*, *supra.*

[9] *Id.*

As such, a consumer cannot make a truly informed purchasing decision—despite the express purpose of a price-comparison website.

24.     Thus, California's Honest Pricing Law benefits consumers by enabling them to conduct "direct, apples-to-apples price comparison" between different vendors so that they may make "informed purchasing decisions based on their preferences and budgets."[10]  It also ensures businesses engage in fair competition by competing based on the "price and value offered, rather than on their ability to deceive consumers into paying junk fees."[11]

25.     Relying on the drip pricing practice, websites like Defendant's can effectively squeeze every last penny from a consumer's wallet from the start of the purchase process to the circuitous end.  This is because "a shopper may have put so much time into the shopping process that by the time additional fees or charges are disclosed they have already made up their minds to make a purchase."[12]

26.     Indeed, "[c]ompanies may utilize a price dipping approach in order to entice a customer into starting the purchase process, at which point the customer may not want to restart his or her search, once they find out the added costs."[13]

27.     Defendant's multi-step checkout process does exactly that.  Defendant's checkout process allows it to slip the additional mandatory Fee into the final costs to be paid, presenting the Fee in a subtle line item for the first time at the end of the checkout process.

**B.     Defendant's Website Charges Hidden Mandatory "Junk Fee"**

28.     Defendant shows each item's purchase price upfront when it first appears on the Website.  *See, e.g.*, Figure 1 (red box added for emphasis).

---

[10] State of California Department of Justice, *SB 478 Hidden Fees*, *supra.*

[11] *Id.*

[12] Investopedia, *Drip Pricing: What It Means, How It Works* (Jan. 24, 2023), https://www.investopedia.com/terms/d/drip-pricing.asp.

[13] *Id.*



**Figure 1**

29.     Once a consumer selects an item to view, Defendant again displays the price of the item without disclosing the mandatory Fee.  *See, e.g.*, Figure 2 (red box added for emphasis).



**Figure 2**

30.    When a consumer adds their prescription information and adds their item(s) to their cart, once again, the purchase price remains the same.  *See, e.g.*, Figure 3 (red box added for emphasis).



***Figure 3***

31.    It is not until a consumer gets to the "Shipping & Billing" step at the end of the checkout process that Defendant discloses the mandatory "Processing" Fee in a subtle line item provided near the bottom of the page.  *See, e.g.*, Figure 4 (red box added for emphasis).



***Figure 4***

32.     However, by the time Defendant discloses this Fee, consumers have already spent their time carefully reviewing and selecting the items they wish to buy and inputting in prescription information.  In doing so, consumers rely on Defendant's previously advertised prices when deciding whether to pick which item to purchase.  Thus, Defendant's omission of the mandatory "Processing" Fee until the end of the checkout process is an unfair practice designed to string consumers along with the false impression of a lower purchase price and prevent consumers from being able to make an accurate comparison between Defendant's prices and its competitor's prices.

33.     Moreover, Defendant's failure to disclose its hefty, mandatory "Processing" fee on its Website until the end of the checkout process directly violates the CLRA pursuant to Cal. Civ. Code § 1770(a)(29)(A) (the "Honest Pricing Law"), which prohibits Defendant from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than" government-imposed taxes or fees and *bona fide* postage or shipping charges.  Cal. Civ. Code § 1770(a)(29)(A).  The "Processing" Fee is neither a government-imposed fee nor a fee for postage and shipping.  As such, Defendant is obligated to disclose this Fee along with the initial advertised price.  It is not enough for Defendant to do so

only at the end of the checkout process.  But that is exactly what Defendant does.  At no point prior to the end of the checkout process does Defendant disclose the mandatory "Processing" Fee.  Instead, it nickels-and-dimes its consumers one hidden fee at a time.  Thus, Defendant's dishonest drip pricing scheme is a direct violation of the CLRA's Honest Pricing Law.

**C.     Plaintiffs' Experiences**

**1.     Plaintiff Orante's Experience**

34.     In or around March 2025, Plaintiff Orante visited the Website to purchase contact lenses while in Concord, California.

35.     Altogether, Defendant advertised the price of these items as $172, exclusive of tax and shipping, on its Website.  When browsing and selecting which contact lenses to buy, Plaintiff Orante relied on Defendant's advertised prices to decide whether to purchase that item or not.

36.     Plaintiff Orante added the items to his cart, and the price remained the same.

37.     However, once Plaintiff Orante reached the "Shipping & Billing" portion of the checkout process, a "Processing" Fee of $17.97 was added to the total cost of the items.

38.     This "Processing" Fee was not included in the original purchase price advertised on Defendant's Website.

39.     Thus, ultimately, Plaintiff Orante paid the advertised price for each item, but also had to pay the mandatory "Processing" Fee at checkout—despite the fact that Defendant waited until the last possible moment to reveal that mandatory Fee, in violation of the CLRA's Honest Pricing Law and other California consumer protection statutes.

40.     As such, Plaintiff Orante was deceived into thinking that his purchase would cost only the sum of the advertised prices for the items he had selected to buy (plus any government-imposed taxes, to be determined at a fixed rate).

41.     Plaintiff Orante's experience is not an isolated incident.  Defendant uniformly fails to include the "Processing" Fee in the prices it advertises on its Website prior to the checkout page.  The "Processing" Fee varies depending on the items bought and the purchase price.  Thus, the facts giving rise to Plaintiff Orante's claims are materially the same as the Class he seeks to represent.  In all cases, these hidden fees make it difficult for consumers to compare prices offered by

different websites and consistently result in consumers spending considerably more than they would otherwise.

### 2.    Plaintiff Boyd's Experience

42.    In or around August 2025, Plaintiff Boyd visited the Website to purchase contact lenses while in Los Angeles, California.

43.    Altogether, Defendant advertised the price of these items as $39.96, exclusive of tax and shipping, on its Website.  When browsing and selecting which contact lenses to buy, Plaintiff Boyd relied on Defendant's advertised prices to decide whether to purchase that item or not.

44.    Plaintiff Boyd added the items to his cart, and the price remained the same.

45.    However, once Plaintiff Boyd reached the "Shipping & Billing" portion of the checkout process, a "Processing" Fee of $57.14 was added to the total cost of the items.  The amount of this Fee charged to Plaintiff Boyd was, on its own, higher than the total advertised price of the products he purchased.

46.    This "Processing" Fee was not included in the original purchase prices advertised on Defendant's Website.

47.    Thus, ultimately, Plaintiff Boyd paid the advertised price for each item, but also had to pay the mandatory "Processing" Fee at checkout—despite the fact that Defendant waited until the last possible moment to reveal that mandatory Fee, in violation of the CLRA's Honest Pricing Law and other California consumer protection statutes.

48.    As such, Plaintiff Boyd was deceived into thinking that his purchase would cost only the sum of the advertised prices for the items he had selected to buy (plus any government-imposed taxes, to be determined at a fixed rate).

49.    Plaintiff Boyd's experience is not an isolated incident.  Defendant uniformly fails to include the "Processing" Fee in the prices it advertises on its Website prior to the checkout page.  The "Processing" Fee varies depending on the items bought and the purchase price.  Thus, the facts giving rise to Plaintiff Boyd's claims are materially the same as the Class he seeks to represent.  In all cases, these hidden fees make it difficult for consumers to compare prices offered by different

websites and consistently result in consumers spending considerably more than they would

otherwise.

## CLASS ALLEGATIONS

50.     **Class Definition:** Plaintiffs bring this action on behalf of themselves and all others

similarly situated, as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3).  The

proposed class Plaintiffs seek to represent is defined as follows:

> All persons in California who, within the applicable statute of
> limitations period, up to and including the date of final judgment in
> this action, purchased any one or more items from the
> OptiContacts Website and paid Defendant's mandatory
> "Processing" Fee that was not advertised with the initial advertised
> price of the item (the "Class").

51.     Specifically excluded from the Class are: (1) Defendant and its officers, directors,

employees, principals, affiliated entities, controlling entities, and other affiliates; (2) the agents,

affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such

persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of

their immediate families.

52.     Plaintiffs reserve the right to amend the definition of the Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

53.     **Numerosity.**  Members of the Class are so numerous that their individual joinder

herein is impracticable.  On information and belief, the Class comprises at least tens of thousands

of consumers throughout California.  The precise number of Class members and their identities are

unknown to Plaintiffs at this time but may be determined through discovery.  Class members may

be notified of the pendency of this action by mail and/or publication through the distribution

records of Defendant.  Further, the size and relatively modest value of the Class Members'

individual claims renders joinder impractical.  Accordingly, the class action mechanism is the most

economically feasible means of determining and adjudicating the merits of this litigation.

54.     **Commonality and Predominance.**  There are well-defined common questions of

fact and law that exist as to all members of the Class and that predominate over any questions

affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class Member, including, but not limited to, the following:

> (a)    Whether the Fee charged is uniform across all purchases;
>
> (b)    Whether the Fee charged is a mandatory fee;
>
> (c)    Whether the Fee charged is a government-imposed or shipping fee;
>
> (d)    Whether Defendant's conduct is unlawful under California's consumer protection statutes; and
>
> (e)    Whether Plaintiffs and the Members of the Nationwide Class and California Subclass are entitled to actual damages for the aforementioned violations.

55.    **Typicality.**  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like the Members of the Class, purchased items through Defendant's Website at an initial advertised price and were later forced to pay an additional, mandatory fee at checkout that was not included in, or disclosed with, the initial advertised price nor imposed by the government or necessary for shipping goods.

56.    **Adequate Representation.**  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class Members they seek to represent.  Plaintiffs have retained competent counsel experienced in prosecuting class actions, and Plaintiffs' counsel intends to prosecute this action vigorously.  The interest of the Members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

57.    **Superiority.**  The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Members of the Class.  Each individual Member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

58.    Additionally, class certification of the Nationwide Class and California Subclass is appropriate under Fed. R. Civ. Proc. 23(b)(2) because Defendant has acted on or refused to act on grounds generally applicable to the Class, making appropriate declaratory, injunctive, and equitable relief with respect to the Plaintiffs and the Class as a whole.

59.    Without a class action, Defendant will continue a course of action that will result in further injury to Plaintiffs and members of the Class, and will likely retain the benefits of its wrongdoing.

60.    Based on the foregoing allegations, Plaintiffs' claims for relief include those set forth below.

<u>COUNT I</u>
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq*.**

61.    Plaintiffs hereby re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

63.    Cal. Civ. Code § 1770(a)(29)(A) prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) [t]axes or fees imposed by a government on the transaction [or] (ii) [p]ostage or carrier charges that will be reasonably or actually incurred to ship the physical good to the consumer."

64.    As alleged, Defendant advertises and displays the price of contact lenses and other items on its Website without disclosing the mandatory "Processing" Fee until the end of the checkout process.

65.    The Fee charged is mandatory because a consumer cannot check out and complete

their order without paying that Fee.

66.     The Fee charged is neither a government-imposed fee nor a fee for shipping physical goods.

67.     By committing the acts and practices alleged herein, Defendant has violated the CLRA's Honest Pricing Law pursuant to Cal. Civ. Code § 1770(a)(29)(A).

68.     Plaintiffs and Class Members were injured by Defendant's drip-pricing scheme because they reasonably relied on Defendant's advertised price for the items they purchased. Further, Plaintiffs and Class Members were not reasonably made aware that they were required to pay a mandatory Fee at the first instance when Defendant advertised its prices, but instead, this information was only provided to consumers by Defendant at the end of the checkout process, in a single line-item reference.  As a result, Plaintiffs and Class Members paid prices for the items they purchased that did not conform with the initial advertised price and thus suffered an injury under this statute.  As such, Plaintiffs and Class Members spent money on goods or services that they would not have paid for, or would have paid for on different terms (*i.e.*, would have paid less for), had they known the true costs of the items they purchased from the beginning of and throughout the process of viewing and selecting such items from Defendant's Website.

69.     On or around October 10, 2025, a CLRA notice letter was sent to Defendant, Kits.com Technologies, inc., that complied in all respects with California Civil Code § 1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to the hidden "Processing" Fee and its Website's unlawful drip pricing, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter, which was delivered to and received by Defendant on October 13, 2025, stated that it was sent on behalf of all other similarly situated individuals, such as Plaintiffs.  Defendant failed to remedy the issues raised in the notice letter. Accordingly, Plaintiffs seek damages from Defendant for its violations of the CLRA.

70.     Further, injunctive relief is appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the price of the items offered for sale on its Website, in compliance with the CLRA's Honest Pricing Law, so that Plaintiffs and Class members

can reasonably rely on Defendant's representations as well as of those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

71.     Accordingly, pursuant to Civ. Code § 1780, Plaintiffs and the Class and Subclass seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative practice; (c) restitution of all money and property lost by Plaintiffs and the Class as a result of Defendant's unlawful conduct; (d) punitive damages; (e) any other relief that the Court deems proper; and (f) Plaintiffs' and Class Members' attorneys' costs and fees.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

72.     Plaintiffs hereby re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as if fully set forth herein.

73.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

74.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, unfair, and fraudulent conduct.

75.     Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** by violating the CLRA, Cal. Civ. Code § 1770(a)(29)(A).

76.     As discussed more fully above, Defendant violated the CLRA by failing to disclose its mandatory Fee when it initially advertised the sale price for items on its Website.

77.     Plaintiffs and the Class Members reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

78.     Defendant also violated the UCL's prohibition against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, and non-disclosures as alleged herein constituted "unfair" business acts and practices within the meaning of Bus. & Prof. Code §§ 17200, *et. seq.*, as the

conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

79.     For example, Defendant's pricing scheme is dishonest and harms consumers by preventing them from making meaningful comparisons between Defendant's prices and Defendant's competitors' prices given that Defendant is not transparent about the full cost of its items.  Defendant's practice is likewise deceitful because it causes consumers to expect to pay a certain, lower price, only to later find a higher price is owed at the end of the checkout process.

80.     There were reasonably available alternatives to further Defendant's legitimate business interest such as disclosing the Fee charged along with the initial advertised prices of the items.  There are no legitimate business purposes served by Defendant's hidden Fee.

81.     Plaintiffs and Class Members could not have reasonably avoided the injury suffered by each of them.

82.     The gravity of the consequences of Defendant's conduct outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives to its pricing and advertising practices.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the Class.

83.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and Class Members seek an order requiring Defendant to (a) provide restitution to Plaintiffs and the Class; (b) disgorge all revenues obtained as a result of the violations of the UCL; (c) cease engaging in the violative practices by way of an injunction; and (d) pay Plaintiffs' attorneys costs and fees.

## COUNT III
### Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

84.     Plaintiffs hereby re-allege and incorporate by reference every allegation set forth in the preceding paragraphs as if fully set forth herein.

85.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Defendant.

86.     California Business and Professions Code §§ 17500, *et seq*., also known as the California False Advertising Law (the "FAC"), makes it "unlawful for any person, … corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property … or anything of any nature whatsoever … to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatsoever, including over the Internet, any statement concerning that … personal property … or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable case should be known, to be untrue or misleading …."  Cal. Bus. & Prof. Code § 17500.

87.     As alleged herein, Defendant disseminated or caused to be disseminated deceptive advertising of the cost of products on its Website.  Such advertising, including but not limited to, product advertising and marketing, failed to include all mandatory fees in the advertised price of products on its Website, when in fact an additional "Processing" Fee would be incurred when a consumer purchased the products.

88.     Defendant continues to disseminate or cause to be disseminated such deceptive prices as alleged herein.

89.     The false and deceptive statements regarding the true cost of products on Defendant's Website are likely to deceive the consuming public.

90.     While disseminating or causing to be disseminated the false and deceptive statements regarding the costs of its products, Defendant knew or should have known that the statements were false or misleading.

91.     As a direct and proximate result of Defendant's false and misleading advertising, Plaintiffs and members of the Class have been injured.  Plaintiffs and members of the Class would not have purchased the products from Defendant at all (*i.e.*, because they would have purchased the

products from a different retailer that revealed the actual prices that Plaintiffs and Class Members were charged), or would not have purchased the products on the same terms (*i.e.*, would have paid less for them), had they known the true costs of the items they purchased from the beginning of and throughout the process of viewing and selecting such items from Defendant's Website.

92.    Defendant's false and misleading advertising as alleged above presents a continuing threat to Plaintiffs and other members of the public because Defendant continues to disseminate and advertise false and misleading product totals and will not cease doing so unless and until enjoined or restrained by this Court.

93.    Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an order enjoining Defendant from continuing to engage, use, or employ any act prohibited by Business and Professions Code §§ 17500, *et seq*.

94.    Plaintiffs' success in this action will enforce important rights affecting the public interest.  Plaintiffs herein take upon themselves the enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action; the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiffs by forcing them to pay attorneys' fees from the recovery in this action.  Attorney's fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

(a)    For an order certifying the Class, naming Plaintiffs as representatives of the Class, and naming Plaintiffs' Counsel as Class Counsel;

(b)    For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

(d)    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable and monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiffs and the Class their reasonable attorney's fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.


Dated:  November 18, 2025                    **BURSOR & FISHER, P.A**.

By: ___*/s/ Julia K. Venditti*_____
           Julia K. Venditti

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jvenditti@bursor.com
        idiaz@bursor.com

*Attorneys for Plaintiffs and the Putative Class*

**CLRA VENUE DECLARATION**

I, Julia K. Venditti, declare as follows:

      1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate attorney at Bursor & Fisher, P.A., counsel of record for Plaintiffs.  Plaintiff Jerome Orante alleges that he resides in Concord, California.  Plaintiff John Boyd alleges that he resides in Los Angeles, California.  I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

      2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District given that Plaintiff Orante was located in this District when he purchased items from the Website.

      I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California, this 18th day of November 2025.

                         */s/ Julia K. Venditti*
                            Julia K. Venditti